CULPEPPER, Judge.
The plaintiff, Roy L. Vincent, Jr., seeks to recover for services rendered in moving household furnishings. Defendant, Atlas *250 Van Lines, Inc., had booked the moves and received payment from the shippers, but refused to pay Vincent. From an adverse judgment defendant appealed.
The issue is factual: Did Atlas assure Vincent he would be paid ?
Atlas is engaged in the interstate shipment of household goods and furnishings throughout the United States. It has no trucks of its own. It operates through agents appointed for designated territories. The agents book moves in the name of Atlas and receive from Atlas assignments of bookings. A principal benefit to the agents is booking for return trips. Atlas fixes all shipping rates, receives all payments thereof at its central office and then disburses back to the agents, truckers, packers, etc., their respective compensations, according to an agreed schedule.
Doan Moving & Storage Company, Inc. was the local agent for Atlas in Lake Charles, Louisiana.
The plaintiff, Roy L. Vincent, Jr., is an independent operator who furnishes his own truck and labor in the movement of household goods. He frequently acted as a “subagent” for Doan to move shipments in the name of Atlas.
On the occasion in question, Vincent was the subagent for Doan in the movement of household furnishings for a Captain Elmquist from Leesville, Louisiana to Fort Wayne, Indiana. Charges were invoiced by Atlas to the U.S. Army. On completion of this move, Vincent was contacted in Fort Wayne by the Atlas dispatcher and assigned to move the household furnishings of Robert Moth from Arlington Heights, Illinois to Ponchatoula, Louisiana. The Elmquist and Moth shipments are the ones at issue here.
During the time the Moth shipment to Ponchatoula was being made, both Atlas and Vincent learned that Doan was about to go out of business because of financial difficulties. Atlas then instructed its regional manager, Mr. John H. Galloway, to go to Ponchatoula, meet the shipment and get a check direct from Mr. Moth. This was a departure from the usual procedure by which the shipper handed the check to the truck driver, who took it to the local agent, who in turn forwarded it on to Atlas for disbursement. Moth was contacted by Galloway prior to the arrival of the shipment. Moth told Galloway that he had been instructed by the booking agent in II-linois to deliver the check to the driver of the truck, which he intended to do in this instance.
After plaintiff arrived with the shipment, a dispute arose about the payment. Vincent, knowing that Doan had gone out of business, insisted that he receive Moth’s check for his services before unloading. Galloway insisted that he receive the check. Finally, Vincent talked on the telephone with Mr. Paul Smith, manager of collections at the Atlas home office in Indiana. There is a dispute as to the assurances given to Vincent by Galloway and Smith. Vincent contends that in return for his agreement to unload the furniture, and allow Moth to give his check to Galloway, both Galloway and Smith assured him that he would be paid for his services. Vincent’s testimony in this regard was corroborated by both Moth and by William Mullís, Vincent’s helper.
On the other hand, Galloway and Smith testified they only promised to do what they could to see that Doan paid Vincent for his services.
This factual dispute was resolved by the district judge as follows:
“The preponderance of the evidence shows that the plaintiff did not relinquish the Moth check until after he was assured by representatives of Atlas directly concerned with that check that Vincent would be paid. Relying thereupon, the check was released to Mr. Galloway for Atlas. Mr. Galloway was sent to Ponchatoula to get the check from Mr. Moth and to prevent the check being received by Mr. Vincent or Mr. Doan. *251 Mr. Vincent knew he could not expect payment for his services and expenses through Doan, and he had to rely upon the Moth payment or assurances from Atlas in order to receive a considerable sum due him for his services on these two moves.”
This is a factual question, depending largely on the credibility of the witnesses. Clearly, there is no manifest error by the trial judge. Under the facts as found, Atlas assured plaintiff he would be paid for his services and it is bound by this agreement.
On appeal, a weak argument is made by Atlas that its regional manager, Mr. Galloway, and its manager of collections in the home office in Indiana, Mr. Paul H. Smith, had no authority to enter into such an agreement with Vincent. We think it is clear that both of these employees, who held high ranking supervisory positions, were clothed with apparent authority, regardless of whether they had actual authority, to make such an agreement. Hence, Atlas is estopped to deny the acts which were within ' apparent authority. See Ebert v. Babin Motors, 200 So.2d 672 (3rd Cir. 1967) and the authorities cited therein.
Atlas also contends that any agreement, whereby Galloway and Smith assured Vincent that he would receive payment for his services, is void for lack of cause or consideration, LSA-C.C. Article 1893. This argument has no merit. Atlas received several benefits from Vincent’s agreement to unload the Moth shipment and to allow Moth to pay Galloway direct: (1) the national reputation of Atlas as a mover was protected; (2) the Moth check was used to pay the delinquent account owed by Doan to Atlas; (3) Atlas was thereby assured of collecting its portion of the Moth payment. This was not a gratuitous contract, without any benefit to Atlas. LSA-C.C. Article 1773. This was a commutative contract, LSA-C.C. Article 1768, in which adequate consideration was received by each party.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.